IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KENNETH JOLLY,<br><br>    Plaintiff,<br><br> v.<br><br>JPMORGAN CHASE & CO. and CHASE BANK USA, N.A.,<br><br>    Defendants. | Case No. 3:18-cv-01000-M (BT) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Before the Court is Defendant Chase Bank USA, N.A.'s Motion for Summary Judgment (the "Motion") (ECF No. 25). For the reasons stated, the District Court should GRANT the Motion.

**Background**

Plaintiff Kenneth Jolly sued JPMorgan Chase & Co. (JPMorgan) and Chase Bank USA, N.A. (Chase) in the 191st Judicial District Court of Dallas County, Texas, for alleged violations of the Truth in Lending Act, 15 U.S.C. §§ 1601-1667f (TILA). Original Pet. at 7-8, ¶¶ 32-35 (ECF No. 1-1). After Jolly filed his state court petition, JPMorgan and Chase timely removed the case to federal court on the basis of federal question jurisdiction. Removal Notice (ECF No. 1). Jolly then filed an Amended Complaint dropping JPMorgan as a defendant and proceeding only against Chase. Am. Compl. (ECF No. 8).

1

Jolly's claim arises out of his ex-fiancée's alleged unauthorized use of his credit card. As alleged in the Amended Complaint, Jolly and his father shared a Chase credit card account (the "Chase Account") until Jolly became sole owner of the Chase Account after his father passed away in 2013. *Id.* at 2, ¶ 8. Prior to July 2014, Jolly was engaged to Elena Diamante, who owned a hair salon in Naples, Florida, called Coastal Hair Design of Naples (Coastal Hair). *Id.* at 2, ¶ 9. Jolly visited Diamante in Naples from July 21, 2014, to August 5, 2014. *Id.* at 2, ¶ 10. Jolly alleges Diamante stole the Chase credit card from his briefcase without his knowledge or consent and used the card to make charges at Coastal Hair for $4,550.00 on August 2, 2014, and for $2,850.00 on August 5, 2014. *Id.* at 3, ¶¶ 11-12. Jolly pleads he discovered these two charges when he received his Chase Account statement dated August 27, 2014. *Id.* at 3, ¶ 12. When he confronted Diamante about the charges, she stated she knew nothing about them. *Id.* At the time, he believed her. *Id.*

Charges continued to accrue on the Chase Account. On September 27, 2014, Jolly received another statement listing the following charges:

| August 22, 2014 | $4,550.00 |
| --- | --- |
| August 25, 2014 | $2,850.00 |
| August 27, 2014 | $2,850.00 |
| August 28, 2014 | $4,550.00 |
| September 1, 2014 | $4,550.00 |

2

| | |
|---|---|
| September 6, 2014 | $4,550.00 |
| September 6, 2014 | $2,850.00 |
| September 12, 2014 | $2,850.00 |

*Id.* at 3, ¶ 13. When Jolly again asked Diamante to explain the charges, she attributed them to a computer error at Coastal Hair. *Id.* at 3, ¶ 14. Indeed, Jolly avers Diamante provided many excuses for why the charges occurred and were not removed. *Id.* at 4, ¶ 15. He alleges he believed her because she was his fiancée. *Id.* Also, he was hesitant to accuse her of fraud and, as a result, faced difficulty in disputing the charges with Chase. *Id.*

Jolly and Diamante ended their engagement on December 31, 2014, and throughout much of 2015, Jolly contacted Diamante hoping that she would admit she used his Chase card without his permission. *Id.* at 4, ¶¶ 16-17. Jolly avers that in August 2015 Diamante "essentially admitted" her responsibility for the charges. *Id.* at 4, ¶ 17. He then contacted Chase's fraud department, and Chase reversed the alleged unauthorized charges and credited the Chase Account on August 14, 2015. *Id.* at 4, ¶ 18. However, on December 7, 2015, Chase informed Jolly that they had overturned their reversal of all the charges and would reapply the principal amount of $37,738.03 to the Chase Account.[1] *Id.* at 5, ¶ 20.

---

[1] In addition to the $37,000.00 charged in August and September 2014, the Chase Account was used to pay a $738.03 charge from AT&T Bill Payment in April 2015. Am. Compl. at 4, ¶ 16.

In his summary judgment response, Jolly states that "he received a telephone call from Allison Wersal of Chase informing him that Chase had denied his fraud claim and that the total amount of the Coastal Hair charges would be re-billed to his account." Pl.'s Resp. Br. at 7 (ECF No. 31). On the call, though, Wersal told Jolly that another department would review his case and that a final decision had yet to be made. Pl.'s App. at 6 (ECF No. 32).

Through counsel, Jolly sent Chase a letter on August 2, 2016, providing additional information on events that had transpired since December 2015 and requesting again that Chase remove the unauthorized charges. Def.'s App. at 76 (ECF No. 27). In a response letter dated September 29, 2016, Chase listed the disputed charges by amount and transaction date and notified Jolly that "[o]ur latest review confirmed our previous findings that these charges are valid because we are unable to support that any billing errors have occurred on your account." *Id*. at 86. Chase also notified Jolly that it had "exhausted all available avenues" to refund him for the disputed charges. *Id*. In another letter also dated September 29, 2016, Chase reiterated that it would not reimburse Jolly for the charges. *Id*. at 90-91.

More than six months later, on April 6, 2017, Jolly sent another letter to Chase to contest Chase's September 29, 2016 letter and to provide Chase with a sworn statement Jolly gave to the sheriff of Collier County, Florida. *Id*. at 88. Because he did not receive a response, Jolly sent another letter on May 2, 2017, notifying Chase that Diamante had been arrested and charged with multiple

felonies. *Id.* By a May 21, 2017 correspondence, Chase notified Jolly that it would not refund the disputed charges and would still hold him liable for $37,738.03 plus interest. Am Compl. at 7, ¶ 29.

Jolly filed this lawsuit against JPMorgan and Chase in state court on March 23, 2018. Original Pet. JPMorgan and Chase removed the case to federal court on March 20, 2018, and Jolly filed his Amended Complaint on May 18, 2019. Chase, the remaining defendant, filed the pending Motion arguing it is entitled to summary judgment on Jolly's sole claim under 15 U.S.C. § 1643 because (1) the claim is time-barred pursuant to the one-year statute of limitations period stated in 15 U.S.C. § 1640(e); and (2) even if § 1640(e) does not bar Jolly's claim, the evidence shows that the credit charges at issue were not "unauthorized" within the meaning of § 1643 and § 1602(o). Def.'s Br. at 1-2. Jolly filed a Response (ECF No. 30), and Chase filed a Reply (ECF No. 36). The Motion is fully briefed and ripe for adjudication.

**Legal Standard**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial.

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). But when a party seeks summary judgment with respect to an affirmative defense for which it will have the burden at trial, the summary judgment burdens are different. *Rivers v. Graybill*, 2008 WL 2548118, at *3 (N.D. Tex. June 24, 2008). When a party "who will have the burden of proof at trial concerning an affirmative defense seeks summary judgment based on that defense, he 'must establish beyond peradventure all of the essential elements of the . . . defense.'" *Id.* (quoting *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995)) (internal quotation marks omitted). The beyond peradventure standard imposes a heavy burden on the movant to show there are no genuine material fact disputes and that the movant is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). In determining whether to grant a defendant's summary judgment motion based on the affirmative defense of statute of limitations, the Court draws all reasonable inferences in favor of the nonmovant. *Id.* (citing *Chaplin v. NationsCredit Corp.*,

6

307 F.3d 368, 372 (5th Cir. 2002); *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).

## Analysis

Congress enacted the TILA to promote the "informed use of credit" by consumers. 15 U.S.C. § 1601(a); *see also Anderson Bros. v. Valencia*, 452 U.S. 205, 219-20 (1981). In doing so, Congress sought to assure "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Though the TILA "does not explicitly state that a cardholder can bring a suit claiming a violation of 15 U.S.C. § 1643, the majority of other circuit and district courts faced with such a claim have assumed, on similar facts, the existence of a cardholder claim under § 1643." *Asher v. Chase Bank USA, N.A.*, 310 F. App'x 912, 916 (7th Cir. 2009) (collecting cases). A claim under § 1643 is subject to a one-year statute of limitations. 15 U.S.C. § 1640(e) ("Any action under this section may be brought . . . within one year from the date of the occurrence of the violation."); *Marcotte v. Bank of Am.*, 2015 WL 2184369, at *8 (S.D. Tex. May 11, 2015) (Rosenthal, J.) ("The Truth in Lending Act has a one-year statute of limitations.").

Jolly and Chase dispute which legal standard determines when Jolly's TILA claim for damages accrued. Both parties cite *Marcotte*, which states that the Fifth Circuit "has not yet ruled on when a § 1643 violation occurs." 2015 WL 2184369,

at *9. The Court has not identified any additional authority from the Fifth Circuit discussing when a § 1643 violation occurs. Thus, as the parties have done here, the Court looks to other federal appellate and district courts for guidance. The Sixth Circuit held in an unpublished opinion that a § 1643 violation occurs "with each unauthorized usage of the credit card." *Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 635 (6th Cir. 2007). A court in the Northern District of Illinois reached the same conclusion. *See Draiman v. Am. Express Travel Related Servs.*, 892 F. Supp. 1096, 1098 (N.D. Ill. 1995) (rejecting the plaintiff's § 1643 claim as untimely because it accrued when his "account was charged . . . ."). In contrast, the Seventh Circuit held in *Asher* that a § 1643 claim accrues "when the card issuer notifies the cardholder that despite the cardholder's claim of fraud, the card issuer will not reimburse the cardholder for the disputed amount." 310 F. App'x at 919. *Marcotte* recognized that while "neither *Asher* nor *Borg* is binding, *Asher* is the more persuasive in light of § 1643's text, structure, purpose, and implementing regulations." 2015 WL 2184369, at *10.

Regardless of whether the Court follows *Borg* or *Asher*, Jolly's § 1643 claim is untimely. In *Borg*, the court held that the plaintiff's § 1643 claim was time-barred where the last unauthorized use of the card occurred more than one year from the date the complaint was filed. 247 F. App'x at 636. Here, the parties do not dispute the date of the last unauthorized use of Jolly's card was September 12, 2014. In its brief in support of the Motion, Chase claims that "[a]fter receiving the Account statement ending September 14, 2014, Plaintiff learned that Coastal Hair

charged his credit card eight more times from August 22, 2014 through September 12, 2014 for a total of $29,600.00." Def.'s Br. at 8, ¶ 5; Def.'s App. at 113-15. In response, Jolly agrees "[t]here have been no other authorized or unauthorized charges to Coastal Hair on Jolly's account since September 12, 2014." Pl.'s Resp. Br. at 4. Jolly also testified that the last Coastal Hair charges occurred on September 12, 2014. Def.'s App. at 115. Jolly filed suit against Chase on March 23, 2018—more than three and a half years after the last unauthorized use on September 12, 2014. *See* Original Pet. Under *Borg*, Jolly's § 1643 claim is untimely.

Jolly's claim under § 1643 is also untimely under the test articulated in *Asher*. In *Asher*, the defendant, Chase Bank USA, N.A., notified plaintiff Asher in April 2004 that it would not reimburse him for charges Asher claimed were unauthorized and fraudulent. 310 F. App'x at 914. However, Asher protested, so Chase continued to evaluate his claim and even requested an affidavit of fraud from Asher. *Id.* But "in a letter dated October 15, 2004, but apparently postmarked January 28, 2005, Chase gave final notice that it considered Asher liable for the [unauthorized] charges." *Id.* The Court found the § 1643 violation "occurred and the limitations period commenced when Chase notified Asher that it deemed him liable—for the final time, in January 2005." *Id.* at 919. Thus, Asher timely filed his § 1643 claim in September 2005. *Id.*

In this case, Chase and Jolly engaged in a years-long course of communications regarding the alleged unauthorized charges. The dates and

substance of these communications is not in dispute.² Chase advised Jolly of the charges made at Coastal Hair in routine billing statements dated August 27, 2014 and September 27, 2014. *Id.* at 3, ¶¶ 12, 13. Jolly first contacted Chase to dispute the charges in August 2015, after his efforts to convince Diamante to reimburse him failed. *Id.* at 4, ¶ 18. Chase reversed the alleged unauthorized charges and credited the Chase Account on August 14, 2015. *Id.* at 4, ¶ 18. However, on December 7, 2015, Chase representative Wersal called Jolly to inform him that Chase had denied his fraud claim and that the total amount of the alleged unauthorized charges by Diamante would be re-billed to his account. Pl.'s App. at 6. However, Wersal also told Jolly that another department would review his case and make a final decision. *Id.*

Jolly through counsel sent Chase a letter on August 2, 2016, providing additional information pertinent to Chase's investigation and requesting again that Chase remove the charges. Def.'s App. at 76. Chase responded by letter from Customer Service Specialist Jan Akpalaba dated September 29, 2016, which stated, in pertinent part:

> Thank you for your most recent correspondence dated 08/02/02016, in which you asked that we review our

---

² Chase objects, among other things, to Kevin Keith's affidavit summarizing the content of a recording produced by Chase in discovery, which is included as part of Jolly's summary judgment response. This evidence, even if considered by the Court, does not affect the disposition of the pending motion. Accordingly, Chase's objections are overruled as moot. *See Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690 at *1 n.6 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.) (overruling as moot objections to evidence that is not considered by the court in deciding motion for summary judgment).

> previous findings for [the alleged unauthorized charges by Diamante].
>
> As you mentioned when you contacted us, you disputed the charges because you feel that the charges were made without your authorization by your former fiancée. Since a significant amount of time has passed since the dates of the charges, the merchant is not under any obligation to provide credits to your account. We contacted the merchant to request credits for your account and, unfortunately, we were unsuccessful in securing credits to your account.
>
> Based on our review and the information available to us, we consider the charges valid. The disputed amounts will remain on your account and it will be included in your account balance.
>
> We recognize that this is not the outcome you hoped for in this situation, and we apologize for any inconvenience this matter has caused you. If you have any questions about your account, please call us at the phone number found on the back of your card.

*Id.* at 90-91. Akpalaba also sent Jolly a second letter dated September 29, 2016. *Id.* at 86-87. This letter states:

> Dear BILLY D. JOLLY:
>
> Thank you for your most recent correspondence dated 08/02/02016, in which you asked that we review our previous findings for [the alleged unauthorized charges by Diamante].
>
> Our latest review confirmed our previous findings that these charges are valid because we are unable to support that any billing errors have occurred on your account. We have contacted the merchant on your behalf, unfortunately, we were unsuccessful in securing any refunds to your account. While you may have a valid complaint with the merchant, we have now exhausted all available avenues to us within the credit card industry to

11

> obtain credits for your account. You may choose to continue pursuit of credits outside of the credit card industry. We have notified these credit bureau agencies that you disagree with the resolution of the disputes . . .
>
> The disputed amounts will remain on your account. Please continue to make at least the minimum payment due so that your account remains current.
>
> We recognize that this is not the outcome you hoped for, and we apologize for any inconvenience this situation has caused you. If you have any questions about your account, please call us at the phone number found on the back of your card.

*Id.* at 86-87.

Jolly sent additional letters to Chase on April 6, 2017, and May 2, 2017. *Id.* at 88, 96. On May 21, 2017, Chase responded by letter which stated:

> Dear BILLY D. JOLLY:
>
> Thank you for your most recent correspondence dated 05/02/02017, in which you asked that we review our previous findings for [the alleged unauthorized charges by Diamante].
>
> We appreciate your cooperation and patience while we worked to resolve the disputes.
>
> Our latest review confirmed our previous findings that these charges are valid because since [sic] a significant amount of time has passed since the 2014 and 2015 date of the charges, the merchant isn't under any obligation to provide a credit to your account. We contacted the merchant to request a credit for your account and, unfortunately, they did not honor our request. You may have a valid dispute but we have exhausted any rights that we have in the Credit Card Industry. You may want to pursue these disputes outside of the Credit Card Industry.

> Based on our review and the information available to us, we consider the charges valid. The disputed amounts will remain on your account and will be included in the balance on your next statement. We have notified these credit bureau agencies that you disagree with the resolution of the disputes . . . .
>
> Please continue to make at least the minimum payment due so that your account remains current.
>
> We recognize that this is not the outcome you hoped for, and we apologize for any inconvenience this situation has caused you. If you have any questions about your account, please call us at the phone number found on the back of your card.

*Id.* at 100.

Chase contends that Jolly's § 1643 claim accrued on December 7, 2015, when Chase called Jolly to notify him it was re-billing him for the disputed charges. To the contrary, Jolly argues his § 1643 claim accrued on May 21, 2017, when Chase sent the last written communication to Jolly that it would not refund the disputed charges.

The Court finds Jolly's § 1643 claim accrued on September 29, 2016—the date it sent two letters to Jolly stating its clear and unequivocal decision that Chase "consider[s] the charges valid" and informed Jolly "[t]he disputed amounts will remain on your account and it will be included in your account balance." *Id.* 86-87, 90-91. In *Asher*, Chase initially notified Asher it would re-bill charges to Asher's account, but Asher protested. *Id.* at 914. Chase investigated Asher's claim for an additional period of time but eventually sent a final, written notice that it considered Asher liable for the disputed charges. *Id.* Asher's claim accrued on the

date he received the final notice, so he had one year from that date to file his TILA claim. *Id.* Here, Chase notified Jolly by phone that it would re-bill the disputed charges, but Chase also told him it would continue its investigation and later provide a final decision. Pl.'s App. at 6. After the phone call, Jolly continued to dispute the charges and also provided more documents relating to the criminal investigation of Diamante. Then, like in *Asher*, Chase sent Jolly a written correspondence that it would not refund the disputed charges. Jolly's § 1643 cause of action did not accrue when Chase called him in December 2015, because the record evidence establishes that Chase did not consider this decision final and communicated such to Jolly. But when Chase sent the September 29, 2016 letters, Jolly's claim accrued, and the one-year statute of limitations period commenced.

Jolly broadly construes *Asher* to hold that a § 1643 claim does not accrue until the creditor's last-in-time correspondence that it will hold the debtor liable and argues that because Chase kept sending correspondences to Jolly in response to Jolly's requests for a reversal of Chase's decision, Chase's very last correspondence started the limitations period. Though federal statutes' limitations periods vary, a claim under federal law generally accrues as soon as a person knows that he has been injured and thus possesses a "complete and present" right of action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *United States v. Kubrick*, 444 U.S. 111, 100 (1979). Jolly asserts that the later notices, and sporadic communications to and from Chase, extend the time for suit. Yet negotiations, requests for reconsideration, and new demands for action do not affect the time to

14

sue on a claim that has already accrued. *See, e.g.*, *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980). If the Court accepted Jolly's argument, a TILA plaintiff could potentially extend the short, one-year limitations period with each inquiry or request for reconsideration of the creditor's decision to hold the debtor liable for disputed charges. A TILA plaintiff cannot unilaterally extend the statute of limitations by eliciting serial rejection letters. Chase clearly and unequivocally, or "finally," communicated to Jolly on September 29, 2016, that it would not refund the disputed charges. Jolly's claim accrued on that date, when he knew his claim had been rejected and he possessed a "complete and present" right of action for an alleged TILA violation. That Chase later sent a Jolly a letter reaffirming its "final" decision not to refund the charges does not restart the limitations clock.

Because Jolly's cause of action under 15 U.S.C. § 1643 accrued on September 29, 2016, it is time-barred and should be dismissed with prejudice.[3]

### Recommendation

Because Plaintiff Kenneth Jolly's claim under 15 U.S.C. § 1643 is time-barred, Defendant Chase Bank USA, N.A.'s Motion for Summary Judgment (ECF No. 25) should be **GRANTED**.

Dated August 2, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

---

[3] This determination pretermits the need to address Chase's alternative ground for dismissing Jolly's claims—that the credit charges at issue were not "unauthorized" within the meaning of § 1643 and § 1602(o).

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).